UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------

| | |
|---|---|
| RYAN O'DELL, | : |
| | : |
| Plaintiff, | : Civil Action No. 23-cv-6464 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| QUOTIENT TECHNOLOGY INC., | : **SECURITIES EXCHANGE ACT OF** |
| KIMBERLY ANSTETT, JODY GESSOW, | : **1934** |
| LORRAINE HARITON, ALISON | : |
| HAWKINS, ERIC HIGGS, MATT KREPSIK, | : **JURY TRIAL DEMANDED** |
| ROBERT MCDONALD, DAVID | : |
| OPPENHEIMER, JOSEPH REECE, and | : |
| MICHAEL WARGOTZ, | : |
| | : |
| Defendants. | : |

----------------------------------------------------------

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Quotient Technology Inc. ("Quotient or the "Company") and the members Quotient's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Quotient by affiliates of CB Neptune Holdings, LLC ("Neptune"), a parent company of Neptune Retail Solutions, Inc.

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on July 14, 2023 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby NRS Merger Sub Inc. ("Merger Sub"), a wholly owned subsidiary of Neptune, will merge with and into Quotient, with Quotient surviving as a wholly owned subsidiary of Neptune (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on June 20, 2023 (the "Merger Agreement"), each Quotient stockholder will receive $4.00 in cash (the "Merger Consideration") for each Quotient share owned. Neptune and Merger Sub are affiliates of Charlesbank Capital Partners LLC.

3. As discussed below, Defendants have asked Quotient's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Houlihan Lokey Capital, Inc. ("Houlihan Lokey") in support of its fairness opinion.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Quotient's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

**PARTIES**

9. Plaintiff is, and has been at all relevant times, the owner of Quotient stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Kimberly Anstett has served as a member of the Board since 2022.

11. Individual Defendant Jody Gessow has served as a member of the Board since 2013.

12. Individual Defendant Lorraine Hariton has served as a member of the Board since 2021.

13. Individual Defendant Alison Hawkins has served as a member of the Board since 2021.

14. Individual Defendant Eric Higgs has served as a member of the Board since 2022.

15. Individual Defendant Matt Krepsik has served as a member of the Board since 2022 and is the Company's Chief Executive Officer.

16. Individual Defendant Robert McDonald has served as a member of the Board since 2018 and is the Chair of the Board.

17. Individual Defendant David Oppenheimer has served as a member of the Board since 2017.

18. Individual Defendant Joseph Reece has served as a member of the Board since 2022.

19. Individual Defendant Michael Wargotz has served as a member of the Board since 2023.

20. Defendant Quotient is a company incorporated under the laws of the State of Delaware and maintains its principal offices at 1260 East Stringham Avenue, Sixth Floor, Salt Lake City, Utah 84106. The Company's stock trades on the New York Stock Exchange under the symbol "QUOT."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Individual Defendants" or the "Board."

22. The defendants identified in paragraphs 10-20 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.** **The Proposed Transaction**

23. Quotient operates as a digital media and promotions technology company that offers power integrated digital media and promotions programs for brands and retailers. The Company's Promotions platform offers cash-back rebates, digital paperless promotions, and digital print promotions; and brand and retailer websites and mobile applications; and third-party

4

publishing websites and mobile applications. It also provides Direct-to-Consumer platform, which include Shopmium app to deliver cash back rebates to consumers, market advertisers' brands media, and product placements; Retail Ad Network platform provides brands with a way to support multiple national and regional retailers; Quotient Analytics provides campaign analytics and measured sales results to brands and retailers; and Digital-out-of-Home.. It serves consumer packed goods, representing various brands, including various food, beverage, personal care, and household product manufacturers; retail partners representing various classes of trade, such as grocery retailers, drug, automotive mass merchant, dollar, club, and convenience merchandise channels; and consumers visiting its websites, mobile properties, and social channels. The Company was formerly known as Coupons.com Incorporated and changed its name to Quotient Technology Inc. in October 2015. Quotient was incorporated in 1998 and is headquartered in Salt Lake City, Utah.

24. On June 20, 2023, the Company announced the Proposed Transaction:

> SALT LAKE CITY & JERSEY CITY, N.J.--(BUSINESS WIRE)-- Quotient Technology Inc. (NYSE: QUOT) ("Quotient"), a digital promotions and media technology company, and Neptune Retail Solutions ("Neptune"), an omnichannel retail marketing company with a network of in-store and digital solutions, today announced that they have signed a definitive agreement to combine through Neptune's all-cash acquisition of Quotient. Charlesbank Capital Partners ("Charlesbank"), a private investment firm and current majority investor of Neptune, will be the majority investor of the combined company. Neptune's CEO William E. Redmond, Jr. (Bill Redmond) will be CEO of the combined Neptune/Quotient business.
>
> The transaction, which has an aggregate equity value of approximately $430 million, has been approved by Quotient's Board of Directors (the "Board"), and represents the culmination of a comprehensive review process undertaken by the Board to maximize shareholder value. Under the terms of the agreement, Quotient's shareholders will receive $4.00 per share in cash,

representing a premium of approximately 36.0% to Quotient's 30-day volume weighted average price as of the most recent market close on June 16, 2023.

"We are pleased to enter into this transaction with Neptune and Charlesbank, which will deliver compelling, immediate and certain value to shareholders, while positioning Quotient to continue meeting the needs of its customers," said Robert McDonald, Chair of Quotient. "The Board undertook a thorough review of the Company's standalone growth prospects and opportunities to maximize shareholder value, and we are confident this transaction achieves that objective and is the optimal path forward for our shareholders."

The combination of Quotient and Neptune brings together Quotient's innovative technology platform, extensive digital promotions retail network, and proprietary data with Neptune's broad in-store network and deep data-driven shopper marketing insights across in-store and print media.

"Today's announcement is an exciting next step in our journey in the growing retail media industry and enables us to create more scale as a combined company," said Matt Krepsik, CEO of Quotient. "Neptune and Charlesbank are ideal partners for Quotient, and we look forward to entering into this new chapter."

Bill Redmond, CEO of Neptune, said, "We are thrilled with the transaction and plan to seamlessly integrate Quotient's team, product suite, and retail partners with Neptune's omnichannel network. The combination further advances our proven commitment to retailers and advertisers to drive profitable, incremental, and measurable growth, while deepening relationships with and value for consumers."

"Quotient's merger into Neptune unites two retail marketing innovators and represents a milestone that builds on our successful May 2020 carve-out of News America Marketing, and the transformative operational focus and growth spearheaded by Bill Redmond that created Neptune as it exists today," said Brandon White, Managing Director of Charlesbank. Added David Katz, Managing Director of Charlesbank, "We are excited to work with Bill and the combined Neptune and Quotient teams to create further value for our advertising and retail customers and foster innovative omnichannel growth."

> The transaction is expected to close in the second half of 2023, subject to customary closing conditions, including approval by a majority of Quotient shareholders and regulatory review. The transaction is not subject to any financing conditions. Quotient will cease to be a publicly traded company upon completion of the transaction.
>
> Engaged Capital, LLC, which owns approximately 8.2% of the outstanding shares of Quotient's common stock and entered into a second cooperation agreement with Quotient in June 2023, has entered into a voting agreement with Quotient to vote their shares in favor of the transaction.
>
> "This transaction maximizes shareholders' risk-adjusted returns and provides shareholders immediate cash value. We believe it is in the best interest of Quotient shareholders and are pleased to support the acquisition," said Glenn W. Welling, Founder and Chief Investment Officer of Engaged Capital.
>
> **Advisors**
>
> Houlihan Lokey is serving as financial advisor to Quotient, and Paul Hastings LLP is acting as legal counsel.
>
> PJT Partners is serving as financial advisor to Neptune, and Paul, Weiss, Rifkind, Wharton & Garrison LLP and Ropes & Gray LLP are acting as legal counsel.

\* \* \*

25. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Quotient's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.    The Materially Incomplete and Misleading Proxy Statement**

26. On July 14, 2023, Quotient filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed

with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

27. The Proxy Statement fails to provide material information concerning financial projections by Quotient management and relied upon by Houlihan Lokey in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Houlihan Lokey with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Quotient management provided to the Board and Houlihan Lokey. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

28. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics and a reconciliation

8

of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

29. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

31. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

*Omissions and/or Material Misrepresentations Concerning Houlihan Lokey's Financial Analyses*

32. With respect to Houlihan Lokey's *Selected Companies Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics and multiples for each of the companies selected by Houlihan Lokey for the analysis; (ii) the inputs and assumptions underlying the multiple reference ranges of 10.0x to 12.0x 3-Year Historical Average Adjusted EBITDA for calendar years 2020 to 2022, 9.0x to 11.0x estimated calendar year 2023 Adjusted EBITDA and 5.5x to 7.0x estimated calendar year 2024 Adjusted EBITDA; (iii) inputs and assumptions underlying the 14.00% to 16.00% discount rates to calculate the present value of the expected tax savings from federal NOL Utilization; and (iv) the number of Quotient's fully diluted share outstanding.

33. With respect to Houlihan Lokey's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the terminal values for the Company; (ii) the inputs and assumptions underlying the range of terminal value Adjusted EBITDA multiples of 5.5x to 7.5x and (iii) the inputs and assumptions underlying the discount rates ranging from 14.00% to 16.00%.

34. With respect to Houlihan Lokey's analysis of certain transactions involving target companies that Houlihan Lokey deemed relevant, the Proxy Statement fails to disclose the financial metrics for each transaction selected by Houlihan Lokey for the analysis and the results of the selected transactions analysis.

35. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision

regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

39. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were

misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

40. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

41. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43. The Individual Defendants acted as controlling persons of Quotient within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Quotient, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control,

directly or indirectly, the decision making of Quotient, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Quotient, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

46. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these

defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: July 26, 2023                                                **MELWANI & CHAN LLP**

                                                                      By:  */s/ Gloria Kui Melwani*

Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*